## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN S.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 25-cv-2022 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) | |
| Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER[3]

Before the Court is Plaintiff John S.'s motion and brief in support of reversing the

Administrative Law Judge's ("ALJ") decision denying his disability benefits application

(Dkt. 16: Pl. Br. in Supp. of Rev. the Comm.'s Decision, "Pl. Br."), and Defendant's

memorandum in support of motion for summary judgment (Dkt. 17: Def. Mem. in

Supp. of Mot. for Summ. J., "Def. Mem."), and Plaintiff's reply (Dkt. 28: Plaintiff's Reply

Brief, "Pl. Reply").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On March 5, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 8.)

## I.     Procedural History

Plaintiff applied for disability insurance benefits on July 21, 2021, alleging

disability beginning on July 20, 2021. (R. 15, 340-41.) Plaintiff's date last insured was

March 31, 2025. (R. 17, 393.) Plaintiff's claims were denied initially on December 15,

2021, and upon reconsideration on June 17, 2022. (R. 128-48.) ALJ George Gaffaney held

a telephonic hearing on Plaintiff's application on December 22, 2022 (R. 43-83) and on

January 23, 2023 issued a written decision denying Plaintiff's application (R. 155-81). On

June 14, 2023, the Appeals Council vacated the decision and remanded the case to the

ALJ. (R. 182-87.)

The ALJ then held a video hearing on January 2, 2024, where Plaintiff testified in

the presence of his counsel. (R. 84-127.) On March 6, 2024, the ALJ issued a written

decision denying Plaintiff's application and finding him not disabled under the Social

Security Act.[4] (R. 15-42.) This appeal followed. For the reasons discussed below,

Plaintiff's request is denied, and the Commissioner's request is granted.

## II.     The ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential

evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had

not engaged in substantial gainful activity since his alleged onset date. (R. 17.) At Step

---

[4] The Appeals Council subsequently denied review of the ALJ's decision (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease status post cervical spine fusion, arthritis, degenerative joint disease of the right knee status post arthroscopy, bilateral hip arthroplasty, status post right shoulder surgery, status post left shoulder replacement, coronary artery disease, neuropathy, status post right carpal tunnel syndrome (CTS) release surgery, and left knee arthritis (status post total knee replacement in January 2023). (R. 17-20.) The ALJ also found that Plaintiff had medically determinable but nonsevere mental impairments of anxiety and depression. (R. 18.)

Because Plaintiff's claimed impairments of anxiety and depression are mental impairments, the ALJ evaluated their severity against the four "Paragraph B" functional areas as required in the regulations. The ALJ concluded that Plaintiff had only mild limitations in each of the four "Paragraph B" categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, and pace; and adapting or managing oneself. (R. 18-20.)

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a statutory Listing. (R. 20-23.) Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that he could:

> [L]ift and/or carry 10 pounds occasionally and 5 pounds frequently; can stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday (with normal break periods); can occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, frequent

3

reaching bilaterally, frequent right upper extremity handling and fingering, never climb ladders, ropes, or scaffolds, and avoid hazards such as unprotected heights or dangerous moving machinery.

(R. 23.)

At Step Four, the ALJ found that Plaintiff was capable of performing his past relevant work as an admitting clerk and as an order clerk as those jobs are generally performed. (R. 34-35.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 35.)

### III. Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five "steps" in order: (1) Is the claimant engaging in substantial gainful activity? (2) Does the plaintiff have a severe impairment or combination of impairments? (3) Does the claimant's impairment(s) meet or medically equal one of the impairments listed in the regulations? (4) Is the claimant able to perform his past relevant work? and (5) Is the claimant able to adjust to any other work? 20 C.F.R. § 404.1520(a)(4). Between Steps

4

Three and Four, the ALJ determines the claimant's RFC, which is defined as the most a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

If the claimant is engaging in substantial gainful activity under Step One, does not have an impairment or combination of impairments as described at Step Two, can perform past relevant work under Step Four, or can adjust to other work under Step Five, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment that meets or equals the requirements of Step Three or is incapable of adjusting to other work under Step Five, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v). The claimant has the burden of proof at Steps One through Four. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden shifts to the Commissioner. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit stated, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

5

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.    Analysis**

Plaintiff makes three arguments in favor of remand. First, Plaintiff asserts that the ALJ erred in evaluating his mental impairments and in not incorporating limitations stemming from Plaintiff's mental impairments in the RFC. (Pl. Br. 5-10.) Second, Plaintiff claims the ALJ failed to properly evaluate his manipulative limitations, and argues he was more limited than the ALJ found. (Pl. Br. 10-13.) Third, Plaintiff contends

that the ALJ erred in evaluating his subjective symptoms, and argues he was deprived of a "full and fair" hearing. (Pl. Br. 13-17.) After reviewing the briefs and record evidence, this Court ultimately finds that the ALJ supported his conclusion with substantial evidence as required.

### A.  The ALJ Adequately Considered Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ failed to properly consider his mental impairments at Step Two and in determining Plaintiff's RFC (Pl. Br. 5-10.) As relevant here, the ALJ assessed at Step Two that Plaintiff had the non-severe mental impairments of anxiety and depression. (R. 18-20.) Plaintiff challenges the ALJ's non-severe impairment findings and because the ALJ did not include any mental limitations in his RFC finding. (Pl. Br. 5-10.) After considering Plaintiff's arguments, the Court concludes that the ALJ supported with substantial evidence his consideration of Plaintiff's mental impairments and ultimately, the omission of mental limitations from the RFC.

The ALJ recognized that Plaintiff's treatment records included diagnoses of depression and anxiety and treatment with psychologists Joel Groner, Psy.D. and Tricia McKinney, Psy.D. (R. 18-19.) The ALJ noted that Plaintiff reported improvements in his mood with medication and that he found counseling "helpful" for his depression (R. 18, citing R. 987, 1389, 1399.) The ALJ also emphasized that on numerous examinations before various providers Plaintiff demonstrated cooperative behavior, normal mood and affect, and no impairment of attention, concentration, or memory. (R. 18, citing R.

591, 681, 689, 694-95, 700, 704, 708, 712, 720, 724, 728, 774, 981, 1487, 1649.) The ALJ further highlighted Plaintiff's May 2023 appointment with his primary care provider Diane Flershem, M.D., where Plaintiff reported improved anxiety with overall improved mood. (R. 19, citing R. 1588.)

The ALJ also evaluated the severity of Plaintiff's mental impairments against the four "Paragraph B" functional areas as required by the regulations. (R. 19-20.) For the area of remembering, understanding, or applying information, the ALJ found Plaintiff had a mild limitation and explained that numerous examinations documented no impairment of judgment, memory, or concentration and that Dr. McKinney found Plaintiff did not have reduced intellectual functioning. (R. 19, citing R. 681, 689, 694-95, 700, 704, 708, 712, 720, 724, 728, 1782.) For the area of interacting with others, the ALJ found Plaintiff had a mild limitation and acknowledged that Plaintiff reported his anxiety and depression caused him to become irritable and intolerant. (R. 19.) The ALJ also noted that Plaintiff reported coaching youth baseball and demonstrated normal mood and affect and was described as pleasant and cooperative on numerous examinations. (R. 19, citing R. 419-27, 445-51, 591, 681, 774, 981, 1462, 1487, 1599.)

For concentration, persistence, and pace, the ALJ found Plaintiff had a mild limitation and again noted repeated normal findings of memory and highlighted a March 2022 consultative internal medicine examination where Plaintiff demonstrated normal concentration (R. 19-20, citing R. 1177.) For adapting or managing oneself, the

ALJ found Plaintiff had a mild limitation and noted that he reported engaging in a variety of activities including managing finances, household chores, and exercising. (R. 20, citing R. 419-27, 1173-78.)

After conducting the appropriate analysis to determine the severity of each mental impairment, the ALJ concluded that Plaintiff's "depression and anxiety, considered singly and in combination, do not cause more than minimal limitation" for Plaintiff. (R. 18.) Because the ALJ supported this finding with a detailed discussion of the mental health evidence including normal examination findings and instances of improvement with treatment, the Court finds the determination that Plaintiff did not have a severe mental impairment was supported by substantial evidence and Plaintiff's argument to the contrary is unavailing. Additionally, whether or not the ALJ found Plaintiff had a severe mental impairment is inconsequential because the ALJ found other impairments severe, proceeded with the sequential evaluation, and considered all of Plaintiff's impairments when making his RFC determination. *See Arnett v. Astrue,* 676 F.3d 586, 591 (7th Cir. 2012).

As required, the ALJ further evaluated Plaintiff's mental impairments before determining that they did not warrant limitations in Plaintiff's RFC. (R. 31-33.) In particular, the ALJ properly evaluated the mental medical opinions in the record: the prior administrative medical findings of the state agency psychological reviewers, and the opinions of Dr. Groner and Dr. McKinney. In December 2021 and June 2022, the

9

state agency psychological reviewers, Joseph Mehr, Ph.D. and David Voss, Ph.D., found Plaintiff had no severe mental impairments and no mental RFC limitations. (R. 133-34, 142-43.) The ALJ found the state agency findings to be "persuasive" and explained that they were consistent with the record, particularly Dr. McKinney's counseling treatment notes from 2022-2023 which documented "clear and coherent stream of thought, no abnormalities of thought content, cooperative behavior, appropriate appearance, appropriate affect, and euthymic mood on nearly every visit." (R. 31, citing R. 1786-1808.)

In December 2022, Dr. Groner opined that Plaintiff's mental impairments would severely impair his "ability to understand, remember and maintain concentration, including persistence and pace." (R. 1414-19.) The ALJ found Dr. Groner's opinion "not persuasive" as it was vague and inconsistent with the treatment records from various providers, including primary care provider Dr. Flershem, indicating "normal memory, normal comprehension, normal attention, and generally mild depressive symptoms per the PHQ-9 scores." (R. 32-33.)

Dr. McKinney opined in November 2023 that Plaintiff had several extreme mental limitations including that he would be precluded from performing work for 15% or more of the workday due to limitations in maintaining attention and concentration, interacting with the public, coworkers, and supervisors, and being off task more than 30% of the workday. (R. 1780-83.) In December 2023, Dr. McKinney also opined that

10

Plaintiff could only "minimally tolerate a physical work environment, and his liable mood would prevent him from working with the public, and managers" and that he ultimately could not work due to his mental and physical impairments (R. 1785.) The ALJ found Dr. McKinney's opinions unpersuasive because they were "not consistent with the treatment history or examinations from other providers noting appropriate fund of knowledge and no impairment of judgment, long-term memory, short term memory, attention or concentration" and normal mood and affect. (R. 33.) The ALJ also emphasized that Dr. McKinney's opinions were unsupported by her own treatment notes which generally reflected cooperative behavior, appropriate affect, and euthymic mood. (R. at 33, citing R. 1786-1808.) [5]

Thus, throughout his decision, the ALJ provided a detailed evaluation of Plaintiff's mental impairments, both at Step Two and in evaluating the medical opinions while determining Plaintiff's RFC. The ALJ supported his findings of no severe mental impairments or RFC limitations, particularly by relying on the state agency findings and a detailed consideration of the mental treatment notes, which regularly included

---

[5] Dr. McKinney's treatment notes contain two sections: "Observed/Reported changes condition", which included Plaintiff's subjective complaints and "Client Condition" which consisted of typical mental status exam categories such as appearance, behavior, mood, and affect. (R.1786-1808.) The Court finds the ALJ reasonably relied on the "client condition" findings in analyzing Dr. McKinney's notes, which besides one instance noted by the ALJ indicating depressed mood and affect, were mostly normal. (R. 33, citing R. 1807.) *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.")

normal mental status findings. All of this amounts to substantial evidence supporting the ALJ's evaluation of Plaintiff's mental impairments. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[T]he threshold for such evidentiary sufficiency is not high.")

Plaintiff's arguments that the ALJ erred in this evaluation are unavailing. (Pl. Br. 5-10.) Plaintiff specifically argues the ALJ erred in relying on the state agency findings because they did not include a review of later evidence. (Pl. Br. 5-6.) This argument is unpersuasive because the ALJ considered the later dated treatment notes of Dr. McKinney, which documented mostly normal mental status results, in finding the state agency findings to be persuasive. (R. 31.) Plaintiff also argues that the ALJ did not consider Plaintiff's mental impairments in evaluating the RFC and did not consider the "aggregate effect" of Plaintiff's mental and physical impairments. Plaintiff particularly argues that the ALJ did not consider that his pain medication could affect his mental condition and he had issues interacting with coworkers (Pl. Br. 7-8.) Regarding these assertions, the Court notes the ALJ considered Plaintiff's "rare" use of valium and use of Clonazepam in finding Plaintiff's anxiety and depression to be non-severe. (R. 18.) The ALJ also addressed Plaintiff's reported issues interacting with others at Step Two and nonetheless found he had only a mild limitation in interacting with others (R. 18-19.)

This "aggregate affects" argument also lacks merit because as discussed above, the ALJ considered Plaintiff's mental impairments in determining the RFC, particularly

by evaluating the mental medical opinion evidence from the state agency psychologists, and Drs. Groner and McKinney. (R. 31-33.) Additionally, the ALJ's RFC evaluation "considered all of the claimant's impairments and all of the records" and as discussed above, the ALJ provided a detailed consideration of the mental medical evidence at Step Two. (R. 18-20.) The Court notes that the ALJ's decision must be read holistically and that when doing so in this case, it is clear the ALJ adequately considered Plaintiff's mental impairments in combination with her physical impairments in determining his RFC. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021).

Plaintiff additionally argues that the ALJ did not properly address the effect his mental impairments would have on his ability to do his past relevant work at Step Four in violation of Social Security Ruling ("SSR") 82-62. (Pl. Br. 8-10.) *See* SSR 82-62, 1982 WL 31386 (Jan. 1, 1982). This argument is unavailing because it presupposes that Plaintiff has mental workplace limitations, but as discussed in detail above, the ALJ supported his finding that Plaintiff had no such limitations. Furthermore, the ALJ solicited vocational expert testimony regarding Plaintiff's past relevant work and compared Plaintiff's RFC "with the physical and mental demands of this work." The ALJ concluded Plaintiff could do the work as it is generally performed. (R. 34.) *See Yost v. Berryhill*, No. 15 C 585, 2017 WL 1833183, at *5 (N.D. Ill. May 5, 2017) ("[t]hese findings are sufficient to satisfy SSR 82-62.")

13

All of Plaintiff's arguments regarding the evaluation of his mental impairments impermissibly ask the Court to reweigh evidence. *See Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). Here, the ALJ supported his findings that Plaintiff did not have any severe mental impairments or mental workplace limitations with substantial evidence. The Court affirms the Commissioner's findings on this issue.

### B. The ALJ Properly Assessed Plaintiff's Manipulative Limitations

Plaintiff contends that this Court should remand because the ALJ erred in assessing his manipulative limitations. (Pl. Br. 10-13.) Plaintiff claims that the evidence supports more restrictive manipulative limitations than the RFC limitations of frequent reaching in all directions with both arms and frequent handling or fingering with the right hand. (Pl. Br. 11-13.) Plaintiff also asserts that the ALJ did not sufficiently explain the manipulative limitations in the RFC (Pl. Br. 12-13.) After considering Plaintiff's arguments, the Court concludes that the ALJ sufficiently explained and supported with substantial evidence Plaintiff's manipulative RFC limitations.

The ALJ provided a detailed consideration of Plaintiff's physical impairments, including neuropathy, carpal tunnel syndrome, degenerative disc disease, and shoulder impairments. (R. 24-30.) The ALJ considered the record relating to these impairments including MRIs, x-rays, CT scans, and course of treatment including procedures, medication, physical therapy, and steroid injections. (R. 24-26.) The ALJ noted that the record demonstrated Plaintiff's treatment had been helpful, including significant

14

improvements in his arm symptoms and shoulder pain following a 2020 disc fusion surgery. (R. 26, citing R. 692.) Plaintiff also reported improvements in numbness following carpal tunnel release surgery and ultimately resolution of right-hand symptoms. (R. 26, citing R. 573, 714, 1352.) Plaintiff's left shoulder replacement also resulted in improving symptoms and Plaintiff regaining significant functional range of motion. (R. 27, citing R. 1093, 1095, 1116, 1119, 1122, 1322, 1326, 1330.) Notably, Plaintiff's orthopedic surgeon cleared all lifting and carrying restrictions two months following the surgery in November 2021. (R. 1095.) Plaintiff also reported improvements with his left shoulder following physical therapy in April 2022. (R. 27, citing R. 1406.) The ALJ also emphasized that in October 2023, Plaintiff reported to his pain management specialist being able to manage his pain with medications. (R. 27, citing R. 1755.)

The ALJ also discussed in great detail the physical examination findings in the record. (R. 27-30.) Over the course of this discussion, the ALJ considered results including limitations in shoulder movement and pain in his shoulders and paresthesias in his right wrist. (R. 27-29.) The ALJ also highlighted findings of full musculoskeletal range of motion and full strength in upper and lower extremities. (*Id.*) The ALJ specifically considered the March 2022 internal medicine consultative examination Plaintiff had with Jyothi Gondi, M.D. (R. 30, citing R. 1173-77.) On examination, Dr. Gondi found Plaintiff had full range of motion in his shoulders, elbows, and wrists and

15

full grip strength with no difficulty doing fine and gross manipulations of his fingers and hands. (R. 1176.)

Two medical opinions in the record addressed Plaintiff's manipulative limitations. First, in their prior administrative medical findings, the state agency medical consultants Calixto Aquino, M.D. and Judith Kelly, M.D., assessed that Plaintiff had no manipulative limitations. (R. 135, 144-45.) Second, in December 2022, Plaintiff's rheumatologist Sergey Furmanov, M.D. opined that Plaintiff had several manipulative limitations including no reaching overhead and reduced grasping, fine manipulations, and continuous use of his hands. (R. 1224-25.)

The ALJ evaluated these opinions and found that the state agency findings were not persuasive in part because "no limitation in reaching, handling or fingering or environmental limitations is not consistent with the longitudinal record, additional surgery (January 2023) or testimony." (R. 31.) For Dr. Furmanov's opinion, the ALJ found it unpersuasive because it was inconsistent with the longitudinal record, including findings of improvement and resolution of right-hand symptoms, the 2022 consultative examination findings of full grip strength and no difficulty with manipulations, and later findings of full strength and range of motion. (R. 32.)

The ALJ nonetheless found that Plaintiff had manipulative limitations and explained that Plaintiff's "reports of neuropathy, the history of ADCF fusion surgery, his left shoulder replacement, his CTS and status post release surgery, supports the

16

reaching and manipulative limitations herein." (R. 34.) That explanation coupled with the ALJ's detailed consideration of the medical evidence and evaluation of the medical opinions provided support for the ALJ's physical RFC finding, including manipulative limitations of frequent reaching bilaterally, frequent right upper extremity handling and fingering. (R. 23.) Thus, the ALJ supported his findings regarding Plaintiff's manipulative limitations with substantial evidence.

Plaintiff argues that the ALJ did not adequately explain this finding and that the record supports greater manipulative limitations. (Pl. Br. 10-13.) This argument lacks merit because, as discussed, the ALJ supported his RFC findings with substantial evidence, and appropriately engaged in the weighing of the evidence to determine Plaintiff's RFC. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); 20 C.F.R. 404.1546(c) (it is the responsibility of the ALJ to determine a claimant's RFC). Further Plaintiff's argument, particularly his suggestion that the "ALJ's evidence summary largely favors more restrictive upper extremity/manipulative functioning," amounts to an impermissible request to have this Court reweigh the evidence in his favor. (Pl. Br. 12-13.) *See Chavez*, 96 F.4th at 1021. Thus, Plaintiff's arguments regarding his manipulative limitations are unavailing.

Overall, the ALJ provided a detailed consideration of the evidence regarding Plaintiff's manipulative limitations and reasonably found him more limited than the state agency doctors but less so than the extremely restrictive opinion of Dr. Furmanov.

17

*See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence.") This Court will not reweigh the evidence as Plaintiff is requesting here and finds that the ALJ supported his physical RFC determination, including the manipulative limitations, with substantial evidence.

### C. The ALJ's Evaluation of Plaintiff's Subjective Symptoms Was Not Patently Wrong.

Finally, Plaintiff argues the ALJ erred in consideration of his symptoms and failed to provide him with a "full and fair" hearing. (Pl. Br. 13-17.) After considering Plaintiff's arguments, the Court concludes that the ALJ properly evaluated Plaintiff's subjective symptoms in accordance with the regulations, this evaluation was not patently wrong, and provided him with a full and fair hearing.

When reviewing an ALJ's assessment of Plaintiff's symptoms, this Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). As long as an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Seventh Circuit has even stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

18

As the regulations outline, ALJs consider several factors when evaluating a plaintiff's subjective symptoms, including objective medical evidence and other evidence including a plaintiff's daily activities, the type, dosage, and effectiveness of medications, and other forms of treatment. 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In this case, the ALJ first acknowledged Plaintiff's allegations as set forth in his disability report, function report, and hearing testimony. (R. 23-24). He noted that Plaintiff alleged disability due to a shoulder injury that limited his ability to do physical work, rheumatoid arthritis that limited his ability stand, walk, and type or write for long periods. (R. 23.) The ALJ also noted Plaintiff alleged drowsiness and jitters from medications, that his numerous surgeries, neuropathy, and arthritis prevented him from being able to work. (*Id.*) Plaintiff also alleged his arthritis worsened in his hands, feet, and knees and that his hands cramped and stiffened and he was unable to remain on his feet for extended periods. (R. 23-24.)

After acknowledging these subjective symptoms, the ALJ provided a lengthy review of the evidence on which he based his finding that Plaintiff's pain and limitations were not as severe as he alleged. (R. 24-31.) In accordance with his duties, the ALJ weighed Plaintiff's subjective complaints alongside each other and evaluated them against the record. Specifically, the ALJ discussed how Plaintiff's treatment has been "helpful." (R. 26-27). The ALJ highlighted that Plaintiff improved after his left shoulder surgery, carpal tunnel release procedure, physical therapy, and that he was

19

able to manage his pain with medications. (*Id.*) *See* 20 C.F.R § 404.1529(c)(3)(iv)-(v) (ALJs will consider medication and other treatment for relief of pain or symptoms).

The ALJ also directly considered Plaintiff's daily activities. (R. 30-31). The ALJ noted that Plaintiff indicated he exercised several times a week. (R. 30, citing R. 576, 978, 1389-1410.) The ALJ highlighted April 2022 and January 2023 records where Plaintiff indicated he could climb two flights of stairs and walk two blocks. (R. 30, citing R. 1401, 1593). The also ALJ noted that May, August, and October 2023 treatment notes indicated Plaintiff was a baseball coach and remained active physically. (R. 30-31, citing R. 1462, 1486, 1593, 1631, 1637, 1752). Additionally, the ALJ considered that November 2023 therapy notes indicated Plaintiff took care of his wife after her shoulder surgery. (R. 31, citing R. 1804). *See* 20 C.F.R. § 404.1529(c)(3)(i); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (the ALJ properly considered claimant's activities to determine whether her symptoms were as severe and limiting as she alleged).

In acknowledging Plaintiff's subjective symptoms and then addressing Plaintiff's treatment history and daily activities, the ALJ provided sufficient rationale for finding Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 24). The ALJ also did not disregard Plaintiff's subjective symptoms, rather in determining Plaintiff's RFC, the ALJ explained that Plaintiff's "reports of pain, limited mobility, and loss of function, along with his surgical history, and the physical examination findings noted above support a sedentary

20

exertional level with postural limitations." (R. 34.) Thus, this Court finds the ALJ's analysis was not "patently wrong." *See Deborah M.*, 994 F.3d at 789.

In alleging error in the evaluation of his subjective symptoms, Plaintiff takes particular concern with the ALJ's consideration of his alleged need to elevate his legs and nap, and the nature of his role as a baseball coach. (Pl. Br. 13-17.) The ALJ acknowledged Plaintiff's alleged need to elevate his legs and drowsiness and reasonably found them (along with the rest of Plaintiff's subjective complaints) not entirely consistent with the record (R. 24.) Plaintiff further asserts that the ALJ was required to specifically discuss his alleged "napping requirement." (Pl. Br. 16, citing *Sallie S. v. Dudek*, 2025 WL 1158456, at *3 (N.D. Ill. Apr. 21, 2025). Plaintiff primarily relies on his hearing testimony in support of this alleged need to nap and the Court notes that the full testimony belies such a limitation as Plaintiff testified that he tried to avoid intentional napping to sleep better at night. (R. 103). Because the ALJ considered Plaintiff's alleged drowsiness and Plaintiff's own testimony does not support a napping requirement, the Court finds no error in the ALJ's analysis of Plaintiff's subjective symptoms. *Chavez*, 96 F.4th at 1021.

Additionally, Plaintiff alleges that the ALJ mischaracterized the evidence regarding him being a baseball coach, asserting that he was merely a "bench coach." (Pl. Br. 15, citing R. 68). The Court is not persuaded by this argument because the ALJ's decision does not delineate any particular responsibilities and does not rely on this

21

evidence other than to demonstrate along with Plaintiff's other activities, particularly his exercise, he was not as limited as alleged (R. 30-31). The Court also notes that "an ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Plaintiff's argument primarily asks the Court to reweigh the evidence as to his subjective symptoms and hearing testimony, which it cannot do, especially when as here the ALJ provided a subjective symptom analysis that was not "patently wrong." Thus, Plaintiff's arguments regarding the ALJ's subjective symptom analysis are unavailing.

Plaintiff separately argues that the ALJ's conduct at the hearing deprived Plaintiff of a full and fair hearing. (Pl. Br. 15-17.) Specifically, he contends that the ALJ "routinely" interrupted his attorney while asking Plaintiff about various topics and suggests this behavior prevented him from fully presenting evidence of his impairments. (*Id.*).

The Seventh Circuit has addressed the issue of a "fair and full hearing" and explained that the standard is "violated if a claimant is not offered a chance to present evidence or where the ALJ exhibits bias or animus against the claimant during a hearing." *Davenport v. Astrue*, 417 Fed.Appx. 544, 546 (7th Cir. 2011). The Seventh Circuit further explained that "[b]ias cannot be inferred from a mere pattern of rulings by a judicial officer; it requires evidence that the officer had it in for the party for

reasons unrelated to the officer's view of the law." (*Id.* at 546, citing *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir. 2007)).

While the hearing transcript indicates the ALJ interjected during the hearing, the Court finds no instances where the ALJ's actions impeded Plaintiff's ability to testify or his attorney's opportunity to question him. (R. 84-127.) Notably, Plaintiff's attorney confirmed she had no further questions for her client before the hearing moved to the vocational expert's testimony. (R. 112.) Additionally, the ALJ allowed time for Plaintiff's attorney to solicit testimony from another vocational expert, which she did. (R. 121-22.) The Court also finds no evidence of bias in the ALJ's conduct during the hearing and notes that at the end of the hearing the ALJ recognized that Plaintiff had been through "an awful lot" and wished him luck, belying any claim of animus on the part of the ALJ. (R. 125.) Thus, this Court finds the ALJ did not deprive Plaintiff of a "full and fair" hearing.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's request seeking to reverse or remand the ALJ's decision (Dkt. 16) and grants Defendant's motion seeking to affirm. (Dkt. 17.)

## SO ORDERED.

ENTER:

_Laura K. McNally_

**LAURA K. MCNALLY**

**United States Magistrate Judge**

**DATED: April 15, 2026**

24